Howard G. CLAIR, Ralph S. Weaver, and Carol S. Pintek, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Anthony J. DELUCA, Harry J. Soose, Francis J. Harvey, James C. McGill, Richard W. Pogue, Daniel A. D'Aniello, Philip B. Dolan, E. Martin Gibson, Robert F. Pugliese, James David Watkins, and The Carlyle Group, Defendants.

No. Civ.A. 03–288.

United States District Court, W.D. Pennsylvania.

Nov. 10, 2005.

Brian D. Long, Chimicles & Tikellis, Wilmington, DE, E. Powell Miller, Miller Shea, Troy, MI, Kwasi Asiedu, Law Offices of Kwasi Asiedu, Torrance, CA, Lionel Z. Glancy, Michael Goldberg, Glancy & Binkow, Los Angeles, CA, Nicholas E. Chimicles, Steven A. Schwartz, Chimicles & Tikellis, Haverford, PA, for Plaintiffs.

Jill M. Szafranski, Mark A. Willard, Eckert, Seamans, Cherin & Mellott, Charles A. Demonaco, Kimberly L. Haddox, Richard J. Federowicz, Dickie, McCamey & Chilcote, Pittsburgh, PA, Thomas L. Patten, Thomas Louis Patten, David A. Becker, Joel B. Ard, Mark A. Klaassen, Latham & Watkins, Washington, DC, Laurie B. Smilan, American Civil Liberties Union of Pennsylvania, Philadelphia, PA, for Defendants.

## MEMORANDUM

STANDISH, District Judge.

Pending before the Court is a Motion by Albert and Barbara Glover ("the Glover Plaintiffs" or "the Glovers"), seeking to become the lead plaintiff in this securities class action. (Docket No. 25.) For the reasons discussed below, the Motion is denied without prejudice.

## I. INTRODUCTION [1]

### A. *Factual History*

The facts of this case are largely irrelevant to the decision herein and will not be reiterated in detail. Briefly stated, Howard G. Clair, Ralph S. Weaver, and Carol S. Pintek ("Plaintiffs") filed an action on behalf of themselves and other investors similarly situated against the "Individual Defendants" [2] and The Carlyle Group [3] (collective-

---

1. The facts in this section are taken from the Complaint.

2. The Individual Defendants are Anthony J. De-Luca, Harry J. Soose, Francis J. Harvey, James C. McGill, Richard W. Pogue, Daniel A. D'Aniello, Philip B. Dolan, E. Martin Gibson, Robert F. Pugliese, and James David Watkins, each of whom is alleged to have been an officer or director of IT Group, Inc., during the Class Period.

3. According to the Complaint, The Carlyle Group is a private merchant bank headquartered in Washington, D.C.

ly, "Defendants"), claiming that Defendants' actions on behalf of IT Group, Inc., violated federal securities law. IT Group, Inc. ("IT" or "the Company"), was an environmental waste remediation firm based in Monroeville, Pennsylvania. The Carlyle Group acquired control of IT in November 1996 and, at approximately the same time, the Company expanded rapidly by acquiring other firms who performed similar services. Plaintiffs claim that by the end of 2001, Defendants had made a number of poor financial and management decisions which, *inter alia,* resulted in liquidity problems and violation of the company's highly lucrative government contracts. IT declared bankruptcy on January 15, 2002.

During the course of the bankruptcy proceedings, Plaintiffs learned that Defendants had consistently misrepresented IT's financial condition and results in annual and quarter filings made with the Securities and Exchange Commission, press releases, and other statements disseminated to the investing public. As a result, Plaintiffs and other investors were damaged when they purchased IT common stock at artificially inflated prices during the Class Period.[4] Plaintiffs did not learn of Defendants' fraudulent activities until March and April 2002 when the relevant documents were published in the bankruptcy proceedings.

### B. *Procedural History*

Plaintiffs filed suit on February 27, 2003, alleging (1) that Defendants breached their fiduciary duty to investors by making false and misleading statements; (2) that by pre-

paring and issuing public statements containing misrepresentations and omissions which induced Plaintiffs and members of the class to purchase IT common stock at artificially inflated prices, the Individual Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § § 78j(b) and 78(n) and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and (3) that Defendants caused the Company to engage in the illegal conduct and practices described above inasmuch as they were "controlling persons" of IT Group as that term is defined in Section 20(a) of the Act, 15 U.S.C. § 78t(a).

On May 18, 2003, Plaintiffs published a notice of the pending private securities class action pursuant to Section 21D(a)(3)(B) of the Act as amended by the Private Securities Litigation Reform Act of 1995 (the "Reform Act.")[5] (*See* Docket No. 17, Exhibit A.) On July 7, 2003, Albert and Barbara Glover moved for approval as lead plaintiff, approval of Glancy Binkow & Goldberg, LLP, and Miller Shea, PC, as Co–Lead Counsel, and approval of Chimicles & Tikellis, LLP, as Liaison Counsel for the Class. (Docket No. 15.) Defendants opposed this motion, claiming that Plaintiffs had failed to comply with the Reform Act requirement that the early notice be published not more than 20 days after the complaint was filed and that any motion seeking appointment as lead plaintiff be filed within 60 days thereafter. (Docket No. 19.) Plaintiffs responded that such notice was not required in light of the relationship between this case and *Payne v. DeLuca,* CA 02–1927,[6] and their reasonable assump-

---

4. The Class Period is defined in the Complaint as October 21, 1998, through February 23, 2000.

5. The Reform Act requires that in private securities class actions, the putative class be given "early notice" of the pending action. "Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-

4(a)(3)(A)(i). The purpose of this notice is "to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status." *California Public Employees' Retirement Sys. v. Chubb Corp.,* 127 F.Supp.2d 572, 576 (D.N.J.2001) (citations omitted).

6. As explained in the Court's Memorandum of December 16, 2004, *Payne* was originally been filed in the United States District Court for the District of Nevada on May 15, 2002, and was transferred to this Court on October 31, 2002. The lead plaintiffs and lead counsel in that case had already been appointed by the Honorable Lloyd D. George. Contemporaneously with the

tion that this case would be consolidated with *Payne.* (Docket No. 21.) When Defendants refused to consolidate the cases "for tactical reasons," Plaintiffs provided the additional notice "out of an abundance of caution," albeit beyond the 20 day publication period. (*Id.* at 1.)

In considering the motion by the Glover Plaintiffs, the Court found that although no additional notice was required, given the timely notice provided in the *Payne* action and the fact that the allegations in the two cases were substantially the same,[7] Plaintiffs herein could not rely on the *Payne* notice because a motion to dismiss had been granted in that case. (Memorandum and Order of December 16, 2004, Docket No. 24, "December 16 Order," at 4–5.) Moreover, we agreed with Defendants that the notice filed in this action failed to conform with the requirements of 15 U.S.C. § 78u–4(a)(3). Plaintiffs were directed to re-publish notice and renew their motion for appointment of lead plaintiff and lead counsel.

## II. ANALYSIS

On March 18, 2005, the Glover Plaintiffs filed a renewed motion for appointment to act as lead plaintiff and for the same firms to serve as co-lead counsel and liaison counsel. ("Motion," Docket No. 25.) They[8] indicated that on January 20, 2005, they published a revised notice of this action on "Primezone," a "widely circulated national business-oriented wire service." (Memorandum of Points and Authorities in Support of Motion of the Glover Plaintiffs for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Co–Lead Counsel, Docket No.

26, "Plfs.' Memo," at 5.) No other members of the putative class responded to the republished notice by seeking to be appointed lead plaintiff, and no class member has opposed the Glover Plaintiffs' Motion.

Defendants oppose the Motion, however, arguing that once again, Plaintiffs failed to publish notice of the class action within the 20 days mandated by the Reform Act and that the Glover Plaintiffs failed to file the motion for lead plaintiff status within 80 days of the December 16 Order permitting them to do so. (Memorandum of Law in Opposition to the Glover Plaintiffs' Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Co–Lead Counsel, Docket No. 30, "Defs.' Opp.," at 5–6.) Defendants further argue that the Glover Plaintiffs do not satisfy the requirements for acting as lead plaintiffs that are set out in 15 U.S.C. § 78u–4(a)(3)(B)(iii). (*Id.* at 7–9.) We address each of these objections in turn.

### A. Timeliness of the Notice and the Glover Plaintiffs' Motion

■ The timeliness of the Glover Plaintiffs' Motion is easily and quickly addressed. The Motion was filed on March 18, 2005, that is, 57 days after publication of the second notice on January 20, 2005, and 92 days after the December 16 Order. A plain reading of the notice provision ties the date for filing a motion for lead plaintiff status only to the publication of the notice. According to § 78u–4(a)(3)(A)(II), a motion to serve as lead plaintiff must be filed "not later than 60 days after the date on which the notice is published." Assuming for the sake of argument that Defendants are correct in their

---

memorandum and order in this case, the Court dismissed the Amended Complaint in *Payne,* directing that a second amended complaint be filed within 45 days. By stipulation of the parties extending the time in which to respond to the second amended complaint, Defendants filed a motion to dismiss on May 27, 2005. The parties did not complete their briefing on that motion until September 16, 2005 and the Court has not yet addressed the pending motion to dismiss.

7. The Reform Act provides that "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title … is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause

notice to be published in accordance with clause (i)." 15 U.S.C. § 78u–4(a)(3)(A)(ii).

8. We note for the record that in the memorandum of points and authorities in support of the Motion, counsel seem sometimes confused as to whether they are writing for the Glover Plaintiffs, the original Plaintiffs, or themselves. For instance, it appears that either Glancy, Binkow & Goldberg, acting independently, or the Glovers published the second notice, not Plaintiffs Clair, Pintek and Weaver. We have attempted to construe the pleadings from the viewpoint of the Glovers as the parties seeking to be named lead plaintiff.

position that the December 16 Order was the triggering event for publication of the notice, that date is irrelevant to the calculation of the date on which the Motion had to be filed. For example, had the notice been published on December 19, 2004, the motion would have been timely if it were filed on or before February 17, 2005 (60 days after the notice), but not if it were filed on February 19, 2005, even though the latter date is only 62 days after the triggering event.

In response to Defendants' argument that Plaintiffs failed to publish the notice itself within the time prescribed, the Glover Plaintiffs contend that the December 16 Order did not set a specific deadline for publication and that they therefore were "expected to act reasonably," which they did. (Plaintiffs' Reply Memorandum in Support of Motion of the Glover Plaintiffs for Appointment as Lead Plaintiff and for Approval of Their Selection of Co–Lead Counsel, Docket No. 33, "Plfs.' Reply," at 2; 4.) Relying on a reference in the December 16 Order to *In re Lucent Techs. Inc. Sec. Litig.*, 194 F.R.D. 137 (D.N.J.2000),[9] and the fact that the court therein ordered a revised notice to be published within 37 days of its decision that the first notice was inadequate, they contend the 20–day period need not be strictly enforced when a plaintiff is required to re-publish the notice. Therefore, they assert that they complied with the intent of the December 16 Order even though the notice was not filed until 35 days thereafter. (Plfs.' Reply at 4.)

In the December 16 Order, the Court determined that the initial notice did not provide the detail necessary to comply with the requirements of 15 U.S.C. 15 U.S.C. § 78u–4(a)(3). This was also the finding of the court in *Lucent*. However, unlike the court in that case, we did not require Plaintiffs to submit a proposed draft of the notice for review before re-publication. In an order dated April 26, 2000, the *Lucent* court required plaintiffs' counsel to submit a revised notice to the court and the defendants for comment by May 12, 2000. Counsel for the defendants were then given ten days to comment on the proposed draft and the plaintiffs were directed to publish the second notice not later than June 2, 2000. *Lucent*, 194 F.R.D. at 148. The thirty-seven day period granted by the *Lucent* court thus anticipated an interim step which the December 16 Order did not—the time necessary for comment and correction. We find the Glover Plaintiffs' reliance on our single reference to *Lucent* and the assumption that a 35–day period in which to republish their notice was therefore "reasonable" to be somewhat over-reaching in light of the clear distinction between the two cases.

We simply directed Plaintiffs to publish a revised notice "in accordance with 15 U.S.C. § 78u–4(a)(3)." (December 16 Order at 5.) The parties have identified and cited numerous cases which address a potential lead plaintiff's failure to comply with the second clause of 15 U.S.C. § 78u–4(a)(3)(A)(i) requiring that motions to serve as lead plaintiff be filed "not later than 60 days after the date on which the notice is published."[10] However,

9. The Glover Plaintiffs' reliance on our reference to *Lucent* in the December 16 Order is made more tenuous by the fact that the case was cited not for its pertinence to the timing issue relevant herein, but rather to the content of the original notice.

10. The Glover Plaintiffs cite, for instance, *Coopersmith v. Lehman Brothers, Inc.*, 344 F.Supp.2d 783 (D.Mass.2004), and *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803 (N.D.Ohio 1999), for the proposition that "alternative timing is to be expected in a renoticing situation," and "circumstances might necessitate adjustments to the [Reform Act's] schedule." (Plfs.' Reply at 4.) In *Coopersmith*, the original plaintiff, Swack, published her early notice on the day she filed suit and a timely motion to be appointed lead plaintiff. *Coopersmith*, 344 F.Supp.2d at 787–88. The issue in that case was the timing of Coopers-

mith's competing lead plaintiff motion filed after Swack's motion was denied, a second class action was filed, and the cases were consolidated. *Id.* at 789. There was no question about the timeliness of the one and only notice in that case; that is, contrary to Plaintiffs' position, *Coopersmith* did not involve a "renoticing situation." Furthermore, contrary to their assertion that case law such as *Coopersmith* "anticipates that adjustments may need to be made for the notice publication dates" (Plfs.' Reply at 5), that case sheds no light on the question of how strictly the 20–day publication period *is to be construed*. *Telxon* also pertains to extension of the 60–day period, not the 20–day period for publication of the notice. *Id.*, 67 F.Supp.2d at 818–819. As in *Coopersmith*, notice in Telxon was published the same day the complaint was filed. *Id.* at 818.

Defendants rely on *Telxon, In re USEC Sec. Litig.*, 168 F.Supp.2d 560 (D.Md.2001), *In re*

there appears to be a dearth of published opinions dealing with the failure of plaintiffs to comply with the introductory clause of the statute, i.e., that "not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published ... a notice advising members of the purported plaintiff class(I) of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u–4(a)(3)(A)(i).

With little guidance from the parties, the Court has independently researched the case law on the 20–day notice period and discovered only one relevant case. In *Century Community Church of God v. Ent & Imler CPA Group*, the plaintiff, CCC, did not publish the required notice twenty days or less after filing the amended complaint in which CCC joined the case as a plaintiff, but rather within 20 days after the court denied the defendant's motion to dismiss that amended complaint almost a year later. The first notice provided an erroneous case number and CCC was compelled to publish a corrected notice nine days later. *"CCC v. E & I,"* CA No. 03–0678, 2005 WL 1115960, *2–3, 2005 U.S. Dist. LEXIS 8679, *7–8 (S.D.Ind., May 9, 2005). As here, the defendant argued that CCC's motion to be appointed lead plaintiff should be denied because the notice was filed out of time, even though there were no other candidates for lead plaintiff.

The court concluded that E & I had not shown "substantial prejudice to potential class members" as a result of the late notice and pointed out that "[t]his is not a case where other investors and attorneys are lining up to carry the burden and to seek the potential rewards of class representation." *Id.* at *3, 2005 LEXIS 8679 at *9. Moreover, while refusing to permit CCC to represent the potential class "would stymie the class action entirely" and thereby serve E & I's interests, such a drastic measure was not required by statute and would "run directly contrary to the purpose of the notice and lead plaintiff provisions of the [Reform Act]" that is, "to protect the interests of a plaintiff class of investors by inviting competition to ensure that the best available class representative takes the lead." *Id.* at *3, 2005 LEXIS 8679 at *9–*10. The court found CCC adequate to serve as lead plaintiff and concluded that in the absence of "other applicants for the lead plaintiff role, and in the absence of a showing of substantial harm to other investors' interests, CCC's late publication of the notice [did] not disqualify it from serving as lead plaintiff." *Id.* at *3, 2005 LEXIS 8679 at *10.

Both parties agree that barring special circumstances identified by the court, failure to file a motion to serve as lead plaintiff within the mandatory 60–day period is fatal to such a claim. *See*, e.g., cases cited in footnote 10. Although by referring to the section of the Reform Act which establishes the time frame for publication and filing we expected Plaintiffs to republish notice within 20 days of the December 16 Order, because we were less than explicit about that expectation, we will not hold them strictly to the statutory requirement. Thus, we conclude that lateness of the notice alone does not preclude consideration of the Glovers' motion for lead plaintiff status.

B.  *Suitability of Albert and Barbara Glover to Act as Lead Plaintiff*

■ In passing the Reform Act, Congress intended "to ensure more effective representation of investors in securities fraud class actions by transferring control of the litigation from attorneys to investors," in part to alleviate the perception that such actions had

---

*MicroStrategy Sec. Litig.*, 110 F.Supp.2d 427 (E.D.Va.2000), and *Skwortz v. Crayfish Co., Ltd.*, CA 00–6766 *et al.*, 2001 WL 1160745, 2001 U.S. Dist. LEXIS 15532 (S.D.N.Y., Sept. 28, 2001). (Defs.' Opp. at 5–7.) In *USEC*, the notice (or an amended notice) appears to have been timely published after the complaint was filed on October 27, 2000, but this was not an issue in the case; in fact, neither was the 60–day filing period although the court included references to this period in its analysis. *USEC*, 168 F.Supp.2d at

562. In *MicroStrategy*, the first plaintiff to file suit issued a press release to a national business news wire service; again, timing of that notice was not an issue. *MicroStrategy*, 110 F.Supp.2d at 432. Finally, *Skwortz*, the plaintiff in the first of eleven similar class actions, filed suit on September 8, 2000, and published the relevant notice the same day. *Skwortz*, 2001 WL 1160745 at *1, 4, 2001 U.S. Dist. LEXIS 15532 at *3, 13. Thus none of Defendants' cases directly addresses the 20–day notice publication period.

become largely attorney-driven. *Lucent,* 194 F.R.D. at 144, *citing* H.R. Conf. Rep. No. 104–369 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 730–734. Therefore, the Reform Act provides that upon motion of a member of the purported class in response to the notice of a pending securities fraud class action,[11] the court is to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," a role referred to as "the most adequate plaintiff." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Because one of the goals of the Reform Act was to encourage shareholders with significant holdings rather than professional plaintiffs to exercise control over the selection and actions of counsel (*Lucent, id.*), the statute establishes a rebuttable presumption that the most adequate plaintiff (1) "either filed the complaint or made a motion in response to a notice;" (2) has "the largest financial interest" in the relief sought by the class as determined by the court; and (3) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). "A district court must exercise exceptional care to insure [sic] that in applying the lead plaintiff provisions of the statute, the concerns that motivated Congress are carefully heeded, as the determination of lead plaintiff by the district court is, with probably little exception, not immediately subject to review."

*Burke v. Ruttenberg,* 102 F.Supp.2d 1280, 1309 (N.D.Ala.2000).

As one court has pointed out, multiple class members may satisfy the first and third requirements of 15 U.S.C. § 78u–4(a)(3)(B)(iii). "The second factor, however, is exclusive; there may be only one person with the largest financial stake in the litigation." *In re MicroStrategy Sec. Litig.,* 110 F.Supp.2d 427, 433 n. 11 (E.D.Va.2000). There is no question that the Glover Plaintiffs satisfy the first criterion; they filed a motion[12] for lead plaintiff status in response to the first untimely, inadequate notice and again in response to the republished notice.

In determining if a proposed lead plaintiff satisfies the third criterion, the court need not conduct a full investigation and analysis of the four prongs of Rule 23, generally referred to as numerosity, commonality, typicality and adequacy. In evaluating the suitability of a proposed lead plaintiff, "the court's initial inquiry should be confined to determining whether [the] movants have stated a *prima facie* case of typicality and adequacy," as required by Rule 23. *In re Cendant Corp. Litig.,* 264 F.3d 201, 264 (3d Cir.2001), *cert. denied sub nom. Mark v. Cal. Pub. Emple. Ret. Sys.,* 535 U.S. 929, 122 S.Ct. 1300, 152 L.Ed.2d 212 (2002).

According to the certifications provided with the Motion, Albert and Barbara Glover, like other members of the putative class,

---

11. As a threshold matter, the court is also required to assure itself, through an independent review, that the notice achieves the Reform Act objective of encouraging the most adequate plaintiff to come forward and take control of the litigation. *See Marsden v. Select Med. Corp.,* CA 04–4020, 2005 WL 113128, *4, 2005 U.S. Dist. LEXIS 714, *13–14 (E.D.Pa. Jan. 18, 2005), and cases cited therein. Defendants have raised no objections to the content of the revised notice as provided by the Glover Plaintiffs in the Declaration of Lionel Z. Glancy, Docket No. 27, Exhibit A, and the Court finds the notice acceptable in that it appears "reasonably calculated to apprise a potential lead plaintiff of the pendency of the action and offer it, him or her an opportunity to move the court to serve as lead plaintiff." *Lucent,* 194 F.R.D. at 146 (internal quotation omitted); *see also* criteria for an acceptable notice, *id.* at 147–148.

12. The Court did not consider the merits of that motion at the time because of the threshold prob-

lem with the notice itself. Contrary to the Glover Plaintiffs' assertion (Plfs.' Reply at 6–8), we did not consider the parties' arguments regarding their suitability as lead plaintiff. Therefore, we reject their argument that Defendants have improperly attempted to achieve a reconsideration of the December 16 Order and cannot now assert objections which should have been stated in their opposition to the initial motion. To forestall a similar argument from the Glover Plaintiffs in the future, we note that arguments raised by Defendants in their memorandum opposing the currently pending motion with regard to (1) standing of the original Plaintiffs, (2) the suitability of the Glover Plaintiffs to serve as class representative in light of a full Rule 23(a) analysis, and (3) the statute of limitations as a bar to claims based on conduct prior to July 30, 1999, are explicitly not decided herein and may be raised at an appropriate point in the future.

purchased shares of IT stock during the Class Period. (Declaration of Lionel Z. Glancy in Support of Motion, Docket No. 27, "Glancy Decl.," Exh. B.) The Complaint asserts that class members were damaged because the price of the stock was inflated as a result of Defendants' false and misleading representations. (Complaint, ¶¶ 284–287.) The Glovers' claims thus appear to be typical in that they "arise from the same course of events," and there is no reason to believe their legal arguments will not be the same as those of other class members in establishing Defendants' liability. Fed.R.Civ.P. 23(a)(3); *see also Lucent*, 194 F.R.D. at 149–51. Because there is nothing to show that the Glovers' "factual or legal stance is not characteristic of that of other class members" (*Lucent, id.* at 150, internal quotation omitted), they appear, at this point, to satisfy the *prima facie* requirements of the typicality prong of Rule 23.

A putative lead plaintiff satisfies the adequacy requirement prong if he or she "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). For purposes of the lead plaintiff determination, adequacy "is contingent upon both the existence of common interests among the proposed lead plaintiff and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *Lucent*, 194 F.R.D. at 151. Unlike the typicality analysis which may be based on a mere comparison of the would-be lead plaintiff's claims vis-a-vis the allegations in the complaint, the adequacy analysis "presents an inquiry that reaches beyond the factual allegations and legal theories of a complaint." *Lucent, id.*

The problem here is that the Glover Plaintiffs have provided absolutely no information about themselves beyond the certifications which are required by law. *See* 15 U.S.C. § 78u–4(a)(2)(A)(i)–(vi). In those certifications, they assert that they are willing to testify at deposition and trial if necessary, have not served as a class representative in a securities litigation action during the preceding three years, and will not accept supplemental payment except as approved by the court for reasonable costs and expenses di-

rectly related to lead plaintiff status. (Glancy Decl., Exh. B, ¶¶ 3, 5, and 6.) They further assert that they have "demonstrated their adequacy" by "evincing a strong desire to prosecute these actions on behalf of the Class and have shown that they are willing and able to take an active role in and control the litigation and to protect the interests of absentees." (Plfs.' Memo at 9.)

■ In enacting the lead plaintiff provisions of the Reform Act, Congress intended that courts would appoint "the most sophisticated investor available and willing to serve in a putative securities class action," that is, "an investor capable of understanding and controlling the litigation." *Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313 (5th Cir. 2002). The consequence of this expectation is that the lead plaintiff in a large private securities class action case is generally, but not necessarily, a large institutional investor rather than an individual. "The two principal responsibilities assumed by a lead plaintiff are: (1) monitor the conduct of class counsel, and (2) decide whether and when the case should be settled or taken to trial." *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 481 (N.D.Cal.2001). A lead plaintiff also has a fiduciary duty to identify and retain competent counsel and to negotiate a reasonable attorney's fee for the class. *Id.* at 482.

We recognize that at this point in the litigation it would be inappropriate to conduct an in-depth analysis of the Glovers' adequacy; rather, such an inquiry properly takes place at the point of class certification. *Lucent*, 194 F.R.D. at 149. However, without disparaging the Glovers personally, there is no evidence that they are the type of sophisticated investor who can control a multi-million dollar class action. *Compare*, for instance, *In re Baan Co. Secs.*, CA 98–2465, 2002 WL 32307825, *3–4, 2002 U.S. Dist. LEXIS 27875, *13–14 (D.D.C. July 19, 2002), where the court, while recognizing "the inherent difficulties in having non-institutional investors as lead plaintiffs," nevertheless appointed three individuals based on their personal declarations that they understood they "must act as final decision-makers in the litigation," had been in regular communication with counsel, and were prepared to do

whatever was necessary to recover their sizeable loss; *MicroStrategy*, 110 F.Supp.2d at 438, n. 28, in which an individual investor seeking lead plaintiff status submitted an affidavit providing information that supported both his desire and his ability to undertake that task, i.e., he was responsible for managing his family's savings, followed his investments on a daily basis, contacted counsel on his own, and was pursuing lead plaintiff status to protect his investment and recover as much as he could for himself and other investors; or *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 668 (C.D.Cal.2005), in which a lead plaintiff candidate filed a declaration stating that he would accept the responsibilities of serving as a representative party on behalf of the class, was comfortable overseeing large projects and meeting deadlines by virtue of his education and experience, communicated with his attorneys via telephone or e-mail on an almost-weekly basis, and was prepared to attend out-of-town court proceedings when necessary.

Here, the Court is presented only with a representation in the Glover Plaintiffs' memorandum that they are "extremely motivated" to pursue this action. This motivation stems from (1) the fact that they made the Motion, and (2) their alleged "significant losses" from their investment. (Plfs.' Memo at 9.) While we do not dispute that their alleged loss was a significant percentage of their investment, that point is more pertinent to determination of their status as having the greatest financial interest. Simply making a motion for lead plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task.

Since there is no declaration to support this alleged "strong desire" and no evidence of their ability to "take an active role" and "control the litigation," we view these assertions somewhat skeptically. We know nothing about the Glover Plaintiffs' understanding of their role and responsibilities as lead plaintiff, their commitment to pursue vigorously litigation that is liable to extend for years, or their experience directing counsel. In sum, we cannot, on the record as it now stands, determine if the Glovers satisfy the adequacy prong of Rule 23(a)(4).

Moving to the third criterion, we view with even more skepticism the Glovers' assertion that they are the "person or group of persons that ... [have] the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii). Nothing in the Reform Act explains how a court is to determine if a candidate for lead plaintiff status meets the financial interest criterion. Courts have typically made this determination in one of three ways: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Cendant*, 264 F.3d at 262, adopting a test established in *Lax v. First Merch. Acceptance Corp.*, CA No. 97–C–2715, 1997 WL 461036, *2, 1997 U.S. Dist. LEXIS 11866, *5 (N.D.Ill. Aug. 11, 1997).

Jointly, the Glovers own 8,500 shares of IT Group common stock purchased in September and October 1999.[13] Their total investment was $81,199.69. They did not sell any shares, but claim to have suffered a loss of $23,866.34, "based on the average close price of IT Group common stock during the 90–day period beginning February 23, 2000, and ending May 23, 2000." (Glancy Decl., Exh. C.) No explanation is provided as to why the loss is calculated as of this period, which is almost two years before the Company declared bankruptcy.

According to the Complaint, on November 1, 2001, there were 21,971,829 shares of IT Group outstanding and actively traded on the New York Stock Exchange. (Complaint, ¶ 51.) At that point, the Glovers owned less than one-half of one percent of the shares, i.e., 00.0387%. The Company's market capitalization at that time was $368 million. (*Id.*,

---

**13.** In detail, the Glovers made the following purchases:

Albert Glover: 2000 shares at $11.64364/share on September 15, 1999

2000 shares at $9.11715/share on October 20, 1999

2500 shares at $9.071244/share on October 20, 1999

Barbara Glover: 2000 shares at $8.50/share on October 26, 1999

¶ 56.c.) The Glover investment represented just over two-tenths of one percent of that amount. There is no question they suffered a significant loss, i.e., 29.4% of their investment. Although they state in their memorandum that to the best of their knowledge, they "believe that they have the largest financial interest in the relief sought by the Class in this case" (Plfs.' Memo at 7), there is no sworn affidavit to support this statement nor do they provide any basis for this speculation. Again, based on the record as it now stands, the Court cannot determine if the Glovers have the largest financial interest of all the purported thousands of class members.

A court is under no obligation to accept a proposed lead plaintiff merely because his or her appointment is unopposed by other members of the putative class. *Lucent*, 194 F.R.D. at 152. Moreover, "a district court would be well within its discretion in ... seeking further information if it deems the original submissions to be an inadequate basis for an informed decision." *Cendant*, 264 F.3d at 262. We wish to be entirely clear that we are not rejecting the Glover Plaintiffs as lead plaintiff in this matter, only that we do not believe they have made an adequate showing at this point that they are the most adequate plaintiff.

This case provides what appears to be a unique situation. If we reject outright the Glovers' motion to be named lead plaintiff, the putative class members are left without any viable plaintiff. Although we have not directly addressed this issue on motion by Defendants, it is obvious from the face of the Complaint and the certifications filed therewith that the original Plaintiffs fail to satisfy the typicality requirement of class representatives because none of them purchased his or her stock in IT during the Class Period.[14] According to Defendants, those three have

"disappeared." (Defs.' Opp. at 3, n. 3.) Therefore, to maintain this litigation it appears that either (1) the Glover Plaintiffs must cure the defects outlined herein, or (2) an alternative lead plaintiff must be identified.

We are disinclined to require a third notice publication in the hope of drawing out another lead plaintiff candidate. Although it may seem unfair to Defendants to allow Plaintiffs yet one more bite at the apple, the Court has an obligation to protect the interests of the putative class members and therefore will reconsider a final attempt by the Glover Plaintiffs (or other as yet unidentified alternatives) to establish their credentials to serve as lead plaintiff. In the interim, the Court will reserve its consideration of the suitability of the Glover Plaintiffs' proposed co-lead and class liaison counsel. An appropriate Order follows.

---

14. As noted above in footnote 4, the Class Period herein is October 21, 1998, through February 23, 2000. According to the certifications attached to the Complaint, Howard Clair purchased his stock in September and December 1995, July 1996, March, April and September 1998, October 2000, and November and December 2001. Carol Pintek purchased her shares in April 1998 and October 2000, and Ralph Weaver purchased his in May 1998, March 2000, and March 2001. The Glover Plaintiffs contend that Clair *et al* were originally named plaintiffs as the result of "an inadvertent clerical error." (Plfs.' Reply Memo at 9.) If counsel can allow such an egregious error as drafting a securities class action complaint in which none of three named plaintiffs satisfies the typicality requirement of Rule 23, one must wonder if that firm has the ability to effectively manage this litigation.